LEWIS C. BURNES *et al.* v. THE CITY OF ATCHISON *et al.*—W. H. HARRIS v. SAME.—THE CHICAGO & ATCHISON BRIDGE COMPANY v. SAME.

BRIDGE CORPORATION—*Void Appointment of Receiver—Action by City.* A city which was a stockholder in a bridge corporation brought an action against the corporation and its officers and stockholders, alleging the making of fraudulent contracts by the managers of the corporation, and that dividends were being paid on unpaid stock, and asking the cancellation of certain stock. On the application of the city, and over the objection of the defendants, a receiver was appointed for the sole purpose of prosecuting this and other like suits on behalf of the city; but the receiver was not permitted to take possession of any property, nor charged with the preservation of any funds; neither was he empowered to manage its business or close up its affairs. The bridge corporation was not insolvent, and the city was not incapacitated to prosecute any proceeding for the enforcement of its rights. The receiver was substituted for the city and made the sole plaintiff in the action, filed pleadings, and obtained a judgment against the bridge corporation and other defendants. *Held,* Upon a review, that the appointment of a receiver, and his substitution as plaintiff instead of the city, was without authority; and *further held,* that the city is a competent party in any proceeding to protect its rights as a stockholder, and may maintain an action in its own name to obtain any equitable remedy to which it is entitled.

*Error from Atchison District Court.*

ACTION by the city of Atchison and George W. Howell, receiver, against Lewis C. Burnes and others. Action by the city of Atchison, the Chicago & Atchison Bridge Company, and George W. Howell, receiver, against W. H. Harris. Action by the city of Atchison and George W. Howell, receiver, and others against the Chicago & Atchison Bridge Company. Judgments for plaintiffs, at the September term, 1888. Defendants bring error.

*Waggener, Martin & Orr,* for plaintiffs in error.

*H. C. Solomon,* city attorney, and *W. R. Smith,* for defendants in error; *T. S. Brown,* of counsel.

The opinion of the court was delivered by

JOHNSTON, J.: In December, 1886, an action was brought by the city of Atchison against the Chicago & Atchison Bridge Company, Lewis C. Burnes and other stockholders in the bridge company, charging fraud in the contracts and transactions of the bridge company and in the issuance of the capital stock of the same, and asking a recovery of the unpaid balance due upon the stock and the cancellation of that which was fictitious and fraudulent. In the amended petition, which was filed in July, 1887, it was substantially alleged that the Chicago & Atchison Bridge Company of Missouri was organized, with a capital stock of $1,000,000, for the purpose of building a bridge across the Missouri river at the city of Atchison; that the Chicago & Atchison Bridge Company of Kansas was incorporated for the purpose of building a bridge across the Missouri river at the city of Atchison, with a capital stock of $1,000,000; that, for the purpose of raising money with which to construct the bridge, the Chicago & Atchison Bridge Company of Missouri, on June 1, 1872, executed 1,200 bonds of the denomination of $1,000, and each bearing interest at the rate of 7 per cent. per annum, and executed a mortgage deed upon the bridge, approaches, together with the franchises

and right-of-way for the bridge, to secure the payment of the bonds; that, as a further security, the Chicago & Atchison Bridge Company of Kansas executed a like mortgage to secure the payment of said bonds; that the payment of the principal and interest of the bonds mentioned was guaranteed by the Hannibal & St. Joseph Railroad Company, the Central Branch Union Pacific Railroad Company, and the Chicago & Southwestern Railway Company; that the consolidation of the two bridge companies was effected on July 18, 1873, with a capital stock of $1,200,000, and the consolidated corporation took the name of the Chicago & Atchison Bridge Company; that the city of Atchison subscribed to the capital stock of the bridge company to the amount of $100,000, and received therefor the stock of the company in the like sum; that the Chicago & Atchison Bridge Company entered into a contract with the American Bridge Company, of Chicago, on April 3, 1874, for the construction of a railroad and wagon bridge across the Missouri river at the city of Atchison, wherein it was agreed that the American Bridge Company should furnish the material and construct the bridge, and in payment should receive $1,200,000 of the first-mortgage bonds of the Chicago & Atchison Bridge Company, and $1,200,000 of the full-paid capital stock of the same company, and $100,000 of the bonds of the city of Atchison; that the American Bridge Company thereupon began the construction of the bridge, and completed the same about September, 1875, at a cost not exceeding $450,000, and upon the completion thereof the Chicago & Atchison Bridge Company delivered to the American Bridge Company the bonds and capital stock in accordance with the said agreement; that when the bonds and stock were so delivered, and during the time of constructing the bridge, a conspiracy existed between the American Bridge Company and the directors of the Chicago & Atchison Bridge Company to swindle and defraud the city of Atchison out of $100,000 of bonds, and that the difference between the sum of $450,000 and the amount of the bonds and stock of the company was divided up between the officers and directors of the two bridge com-

panies; that none of the stockholders in the Chicago & Atchison Bridge Company, except the city of Atchison, paid anything for the stock subscribed by them, and that the city was ignorant of this fact until within the two years preceding the beginning of this action; that the first-mortgage bonds of the Chicago & Atchison Bridge Company were worth $1,000,-000, and that the capital stock was worth $600,000, in cash, at the time of the delivery of the same to the American Bridge Company, and the bonds of the city of Atchison were worth par at the same time; that the consolidated company issued its bonds to the amount of $200,000 in excess of what it was authorized by law to issue; that the stock was divided out among various persons without consideration or payment, and the city alone, of all the stockholders, has paid into the corporation the amount of its capital stock; that since the completion of the bridge its earnings have amounted to not less than $2,000,000, and that after the payment of expenses, repairs, taxes, and dividends, there remains the sum of $800,000, which should be appropriated as dividends on the legitimate stock of the company; that the city has received as dividends on its stock only the sum of $5,000, while other stockholders have received $55,000; that the president and managers of the company in 1885 took out of the treasury $200,000 and paid off outstanding bonds to that amount; that the company has refunded its bonded indebtedness at a rate of 6 per cent. per annum, by the issuance of mortgage bonds payable thirty years from January 1, 1885; that on August 13, 1886, the city, by its attorney, made a demand upon the president and directors to compel each stockholder to pay into the treasury of the company the full face value of the stock held, and that in case they failed to do so within 10 days that suit be instituted against each stockholder for the recovery of the face value of his stock; that the bridge company has failed to comply with the demand, and that the defendant stockholders took their stock with full knowledge that it was unpaid, and fraudulently issued to them or to their assignors. The city prays judgment that the stock held by

the defendants be declared void and canceled; that the bridge company be required to render an account of its receipts and expenditures; and that a receiver be appointed to further prosecute the action against the stockholders, to collect from all the amount of stock held by them, and for such other relief as in equity the plaintiff is entitled to.

The sufficiency of the allegations of the petition were challenged by demurrers filed by the defendants, each of which was overruled by the court; after which an answer was filed by the Chicago & Atchison Bridge Company, admitting the allegation with reference to its incorporation, and that the city of Atchison was duly incorporated, but denied that the city ever subscribed to the capital stock of the Chicago & Atchison Bridge Company, and alleged that it acquired $100,000 of the stock from the American Bridge Company. It admitted the contract with the American Bridge Company for the construction of the bridge across the Missouri river, and alleged that the city had actual notice of the existence of the contract, and of all the terms and conditions of the same; that the contract was recognized in several ordinances passed by the city, and that the $100,000 bonds of the city, voted to aid in the building of the bridge, were deposited with a trustee in the city of New York to be delivered to the American Bridge Company under the terms and conditions of the contract between the Chicago & Atchison Bridge Company and the American Bridge Company. It also alleged that the action was barred by the statute of limitations, because that, during all the time from 1875 down to the institution of the action, the city had knowledge of the contracts and the conditions of the same; that it became and was a party to the contracts, and that it ratified and confirmed the action of the Chicago & Atchison Bridge Company in entering into contracts with the American Bridge Company; that it knew the amount that was to be paid to the American Bridge Company for the construction of the bridge, and acquiesced therein.

The allegations with reference to the issuance of the bonds and stock of the bridge company are admitted, and it is alleged

that the bonds were executed and delivered with the consent and authority of the city; and further, that the city consented to and ratified the action of the bridge company with full knowledge of the fact that the stock of the Chicago & Atchison Bridge Company was to be used as part payment for the construction of the bridge, and with knowledge that it had no other assets whatever than the stocks and bonds with which to construct the bridge. It alleges that the $1,200,000 first-mortgage bonds were not secured by a lien upon any property other than the franchises for building a bridge over the Missouri river, and at that time were not worth to exceed the sum of $10,000. It admits that it has paid off $200,000 of the mortgage bonds, and alleges that the mayor of the city has been designated by the city to act as a member of the board of directors of the bridge company, and as such director has represented the city for the past 10 years in all the proceedings of the board of directors, and the city as a stockholder has been fully informed with reference to the refunding of the mortgage indebtedness and of all the proceedings of each meeting of the company, and has consented and acquiesced therein. It alleges that the matters and things in controversy in this action were adjudicated in a former action between the city and the bridge company in 1885, and that since said adjudication there has been paid to the city as dividends upon its stock the sum of $7,000, and since the institution of this action, and during the pendency thereof, the city has received from the bridge company the sum of $2,000 as dividends from the net earnings of the bridge. It denies that any demand has ever been made upon the board of directors to prosecute actions upon liabilities due the bridge company, and states that if it is deemed by the court that any liability exists against any of the stockholders, it is ready and willing to institute actions against them, and to obey any orders made by the court herein. It further alleges, that it is advised that the present holders of the stock of the company are *bona fide* holders thereof for value, and further, that the city has no authority to hold stock in the bridge company, and has no

right or standing as a stockholder in the company; that the stock held by it is in violation of its charter; and it asks judgment that the stock of the city be canceled.

William H. Harris filed a separate answer and cross-petition, alleging that he paid the par value for his stock, without any knowledge or information concerning the construction contracts; and further, that the city of Atchison had no power or authority to subscribe to the stock of the bridge company, and was not entitled to dividends thereon; and he asks that the stock may be canceled, and the city be required to pay back the dividends which it has received thereon. Each of the other defendants filed a separate answer, adopting the allegations of the answer of the Chicago & Atchison Bridge Company. On January 5, 1888, the city moved the court for the appointment of a receiver, and upon the hearing of the motion it was made to appear that on January 3, 1888, the United States circuit court for the district of Kansas, in an action by the trustee of the holders of the mortgage bonds against the bridge company, appointed a receiver of the property of the bridge company, including the franchises, rights-of-way and all other property connected with the bridge of the company, and directed him to collect all rents and moneys whatsoever, and apply the same under the order and direction of that court. It was then conceded that John C. Tomlinson, who was appointed receiver, had duly qualified and entered upon the discharge of his duties as such receiver.

At the conclusion of the hearing, the judge of the district court of Atchison county denied the application of the city for a receiver to take the possession and custody of the bridge, property, franchises, rents, issues and profits of the Chicago & Atchison Bridge Company, and to manage and operate the same, but ordered that George W. Howell be appointed receiver for the purpose —

"Only of instituting and prosecuting this and other suits to cancel stock held by various parties claiming to be stockholders in said Chicago & Atchison Bridge Company, and the stock issued by said company or the officers thereof, or to in-

stitute suits to recover the value of all stock issued by said Chicago & Atchison Bridge Company or the officers thereof, in such forum and jurisdiction as may be deemed advisable."

The city of Atchison thereupon moved to substitute the receiver as plaintiff, which motion was sustained, and George W. Howell, as receiver, became the plaintiff in the action, and filed his amended petition therein, in which he alleged the order of appointment, his substitution as receiver, and adopted the allegations of the amended petition filed by the city. The defendants opposed the appointment of a receiver, as well as the substitution of the plaintiff, and demurred to the receiver's amended petition for want of sufficient facts, and because he had no legal capacity to sue. This demurrer, as well as that of a like character filed by the other defendants, was overruled by the court. Separate answers were then filed by the defendants, which, among other allegations, denying the right or authority of the receiver to prosecute the action, and setting forth the prior appointment of a receiver in the federal court. In October, 1888, the cause was tried without a jury, when findings of fact were made by the court, and the court stated as conclusions of law — first, "that as to the defendants C. C. Burnes, J. W. Parker, Benjamin F. Stringfellow, R. M. Manley, and B. P. Waggener, the action is barred by the statute of limitations;" second, "that as to the remainder of the individual defendants, the capital stock held by these in the Chicago & Atchison Bridge Company is deemed to have been issued without consideration, and will be adjudged and decreed to be canceled and held to be null and void;" third, "said stock is ordered to be brought into court and canceled;" fourth, "the Chicago & Atchison Bridge Company is enjoined from recognizing said stock or paying any dividends thereon." Judgment was entered by the court in accordance with the conclusions of law. Exceptions were taken to the ruling of the court upon the demurrers to the pleadings, upon the appointment of a receiver and the substitution of the receiver as plaintiff in the action, as well as to many rulings upon the evidence, and the findings of fact and law. Motions for judg-

ment on the findings of fact and for a new trial, separately filed by the defendants, were overruled and denied, and the defendants separately excepted to the rulings thereon. A case-made. was settled and signed by the court at the instance of the defendants, and three petitions in error have been filed therewith, which will be considered together.

The findings of the court covered a wide range, and many questions thereon are elaborately discussed by counsel. Although we have given much attention to some of these, we find that they cannot be properly considered or decided on account of an objection with which we are met at the threshold of the inquiry. The action was prosecuted by an unauthorized person, termed a receiver, and the judgment complained of was given in his favor. The defendants below resisted the appointment of Geo. W. Howell as receiver, objected to his substitution as plaintiff and to the pleadings which he filed, challenged his right to conduct the litigation by objections to the testimony and to the findings and judgment. If the appointment of the receiver was unwarranted, and if he had no authority to prosecute the action, then there was no plaintiff in the proceeding, as the receiver was substituted for the city of Atchison, after which it dropped out of the case as plaintiff, and the action proceeded on the pleadings filed by the receiver and upon the issues formed between him and the defendants. The application of the city was for a receiver to take possession of the bridge property, franchises, rents, issues and profits of the Chicago & Atchison Bridge Company, and to manage and operate the business of the company, and also to prosecute this and other proceedings against the stockholders and officers of the company, to remedy the alleged wrongs that were stated in the pleadings. The court denied the motion of the city for a receiver to take possession of the property or to manage and operate the same, but did appoint the receiver for the sole purpose of instituting and prosecuting "this and other suits," for the benefit of the city of Atchison. It thus appears that the court limited the functions of the receiver to being a mere representative of the city of Atchison, and pos-

sibly this may be accounted for on the ground that a receiver of the property of the bridge company had been appointed by the federal court a few days before the appointment of Howell, who was then in the custody and control of the bridge and all other property of the company. Why the receiver was appointed merely to prosecute this action for the city is not easily seen. The city is not insolvent, nor incapacitated to prosecute any action or proceeding for the enforcement of its rights, or to protect it from the wrong-doing of any officer or stockholder of the bridge company, or of any other person. The statute gives the city authority "to sue and be sued," and it has no need of a representative or receiver to appear in court in its behalf or to sue for it. According to the allegations and the proof, the Chicago & Atchison Bridge Company is solvent; but if a receiver of its property was necessary or allowable for any reason, it was already provided with one. There is some contention that the receiver of the federal court was appointed and given control of the property of the company merely to thwart the action of the state court, and that he is entitled to no precedence over Geo. W. Howell, appointed as receiver in this proceeding; but that question is wholly immaterial, since the court refused to appoint Howell as a receiver of the property, and only appointed him to bring this proceeding in behalf of the city. He was not authorized to take charge of the assets of the corporation, and neither was he empowered to manage its business or close up its affairs. He is not charged with the protection of any fund or the preservation of any property. Instead of being the representative of all persons interested in the litigation, he is the champion of the plaintiff, and adverse to all the other parties to the controversy.

We are referred to § 254 of the civil code as an authority for the appointment; but the remedy there provided is a provisional one, to be exercised where there is property, funds, or rights of action to be protected, managed, and disposed of, and also where corporations have been dissolved or have forfeited their rights. This section affords no warrant for the appointment of a receiver, such as has been made, nor does

defendant in error call our attention to any authority which would authorize the appointment under the general equitable jurisdiction of the court. If a receiver of the property had been appointed for any sufficient reason, he might have been empowered to collect what was due on unpaid stock, or to correct the alleged wrongs of the officers and managers of the corporation, and for these purposes might have been authorized to institute legal proceedings; but the appointment in such a case would have been only an incident to the matter in controversy. The receivership in this case, however, is not an incident to the matter involved, neither does the receiver sustain the relation to the court nor perform the functions ordinarily sustained and performed by a receiver. A receiver is an officer of the court, and should be an indifferent person between the parties to a cause. He is appointed in behalf of all the parties, and not as the agent or representative of either party, and should exercise his functions "in the interest of neither plaintiff nor defendant, but for the common benefit of all the parties in interest." (High, Rec., § 1; Beach, Rec., § 2; 27 Myer's Fed. Dec. 22.) In this case the receiver was appointed as the mere agent or representative of the plaintiff alone, and the powers conferred on him were to be exercised in direct antagonism to all the defendants. There seems to have been doubt in regard to the position the receiver occupied in the minds of the parties and the trial court. In some cases he is treated as the receiver of the bridge company, and as bringing the action for the benefit of the corporation, and yet he prosecutes and obtains a judgment against the corporation. In other instances he is spoken of as a receiver prosecuting the action for the benefit of the city of Atchison, and the findings and judgment of the court recite that this was the purpose of the appointment, and that his function was to prosecute the suit for the benefit of the city of Atchison and against the Chicago & Atchison Bridge Company.

It is said that the equitable jurisdiction of the court to appoint receivers is not to be doubtingly exercised, and never where there is any other adequate remedy; but, in this case

as has been stated, there is neither authority nor necessity for providing the city of Atchison with a representative or receiver. It is a competent party in any proceeding to protect its rights as a stockholder, and if the officers of the corporation have made fraudulent contracts, or are engaged in transactions which will result to the injury of the corporation or the city as one of its stockholders, it may maintain an action in its own name to protect its own or the interests of the corporation, or to obtain any equitable remedy to which it is entitled. Ordinarily, an action to enforce rights or protect the interests of a corporation should be brought in the corporate name; but where the officers or managers of the corporation refuse, upon proper request, to bring such action, it may be brought in the name of the stockholders. (4 Am. & Eng. Encyc. of Law, 280, and cases cited.)

*Bridge corporation — void appointment of receiver — action by city.*

It is conceded by both parties that if a cause of action exists in favor of the city in this case it may be prosecuted in the name of the city; and if that is true, what reason is there for the appointment of a representative of the city, and what authority is there for the substitution of another as plaintiff in its stead? The counsel for the receiver argue at great length, and cite numerous authorities to sustain the right of the city as a stockholder to bring the action, and thereby has furnished an argument against the appointment of a receiver and his substitution in the place of the city. If a cause of action exists in favor of a stockholder, and the corporation refuses to proceed upon proper request, the city as a stockholder is a real and competent party to bring the action; and there is no necessity or reason in substituting a next friend or receiver to sue for it.

The principal cause of complaint is the contract which was made between the Chicago & Atchison Bridge Company and the American Bridge Company, by which all the stock and bonds of the former were given to the latter for the building of the bridge; but if a cause once existed in favor of the city by reason of the vice in that contract and the fraud of the

parties thereto, it may have been validated by acquiescence and ratification on the part of the city. It is a familiar rule of equity that voidable contracts tainted with vice in their origin may become valid by the subsequent acquiescence and adoption of the parties. The contract in question was made in 1874, and the bridge was completed under that contract in 1875, and it seems from the testimony that the city was then acquainted with all the terms and conditions of the contract, and the consideration which was to be paid for the bridge. With this knowledge, the city has remained silent until recently, has participated in numerous meetings of the stockholders, and has accepted payments of dividends on the stock which it acquired through the contract. It is claimed in behalf of the city that it had no knowledge of what such a bridge would cost until within two years prior to the commencement of the action; and further, that it had no knowledge until then of the over-valuation of the bridge, and of the alleged wrongful absorption of the proceeds of the stock and bonds by the parties concerned in the contract. On the other hand, it is contended that at the time the contract was made the company had no property except the franchise to build the bridge; that its stock and mortgage bonds had no market value; that various efforts to secure the building of the bridge for the stock and bonds were unavailing; and that finally the American Bridge Company was procured to build it for the consideration mentioned. It is claimed that the transaction was made openly and in good faith, and upon the most favorable terms for the Chicago & Atchison Bridge Company that could be secured, and also with the full knowledge and approval of all interested parties, including the city. Whether the city is not chargeable with knowledge of what the bridge would cost, and whether there was any fraud in the transactions of those interested in the building of the bridge, and whether the city has not by its knowledge of these transactions and its delay in repudiating the same, as well as by receiving and retaining the fruits of the transactions, waived the vice in the same, are questions which should only be investi-

gated when the real parties are before the court. If the validity of the contract is to be investigated, it would seem that the American Bridge Company should be made a party. It was an important factor in the transaction; the city received its stock from that company; and all the other stockholders derived their title through the same source.

The other questions in the case which have been so much discussed cannot be investigated in this proceeding, and can only be considered when the issues are framed between the real and the necessary parties to the controversy.

The judgment of the district court will be reversed.

All the Justices concurring.