No. 23,291.

W. R. MITCHELL and C. A. GARBER, *Appellants,* v. RICHARD BEACHY et al., *Appellees.*

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Rights of Former Stockholders to Sue Officers of Corporation for Illegal Appropriation of Corporate Funds.* Where stockholders of a corporation have parted with their stock, they cannot thereafter maintain an action against the officers of the company as individuals, for an alleged illegal appropriation of corporate funds to pay the individual obligation of the officers of the company, where it appears that such stockholders had knowledge of the alleged illegal appropriation before they sold their stock.

2. SAME—*Corporation a Necessary Party to Action.* In an action by stockholders to compel officers of a corporation to make restitution of corporate funds unlawfully appropriated to the private use of the officers of the corporation, the corporation itself is a necessary party.

3. SAME—*Nonstockholders May Not Question Validity of Corporate Acts.* A private individual who is not a stockholder of a corporation or who has ceased to be such stockholder cannot question the validity of the acts of the corporation.

Appeal from Jewell district court; A. E. JORDAN, judge *pro tem.* Opinion filed December 10, 1921. Affirmed.

*R. C. Postlethwaite,* of Mankato, for the appellants.

*J. R. White,* of Mankato, and *F. W. Mahin,* of Smith Center, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is a sequel to an earlier lawsuit in which the plaintiffs sought unsuccessfully to compel the defendant, Richard Beachy, as cashier of the State Bank of Esbon, to transfer certain shares of bank stock, and to issue to plaintiffs new certificates therefor. (*Mitchell v. Beachy,* 104 Kan. 445, 179 Pac. 365.)

In this action it is alleged that the gist of the former lawsuit was a contest between plaintiffs and Beachy individually as to the ownership of certain of the bank shares sought to be transferred, and that the cause proceeded to trial and to a determination that Beachy was the owner of one share of the bank stock; and that the State Bank of Esbon was only a nominal party. It is also alleged in this action that Richard Beachy and J. K. Beachy employed a firm of lawyers to defend Richard Beachy in the former lawsuit, and paid them an attorney's fee of $1,250 out of the bank's accrued profits for that service, thereby unlawfully appropriating the bank's funds to pay the individual obligation of Richard Beachy. At the time of

this payment plaintiffs were the owners of 124½ shares of the capital stock of the bank, the total number of shares was 250, the cash capitalization was $25,000, and plaintiffs asked judgment against the defendants, Beachy & Beachy, for plaintiffs' proportionate share of the alleged unlawful appropriation of the bank's funds, $622.50, and other damages.

After the questioned payment of the bank's funds, the plaintiffs sold their bank stock to one Duncan, giving him a bill of sale therefor, with this qualification:

"First parties hereby sell all their interest in the undivided profits and all their interest in said bank except whatever claim first parties may have against the Beachys by reason of the payment of $1,250.00 attorneys' fee to White, Mahin and Mahin attorneys out of the undivided profits of said State Bank of Esbon, it being understood that no claim is to be made against the bank for said claim by first parties."

This action was thereafter begun, and the petition, after narrating various pertinent matters, alleged that the misappropriation of the bank's funds had depleted the value of plaintiffs' stock to the extent alleged, and for which sum and consequent damages they prayed judgment against Beachy & Beachy.

The trial court ordered that the State Bank of Esbon be made a party, which was accordingly done, and the allegations of the amended petition which relate to the bank read:

"The State Bank of Esbon is a corporation duly organized and existing under and by virtue of the laws of the state of Kansas. . . .

"Plaintiffs further allege that said Richard Beachy is president of said Bank of Esbon and J. K. Beachy is cashier of said bank and the said Richard Beachy and J. K. Beachy and the immediate members of their family own the majority of the capital stock and the controlling interest in said bank and have charge of said bank as the executive officers thereof and constitute and represent the majority of the Board of Directors of said Bank and that said Bank is at this time under the control, direction and management of said defendants and that it would be mockery, a farce and utterly useless to require a suit to be brought and prosecuted under the management and direction of said Richard Beachy and J. K. Beachy, the directors and managers of said bank, against themselves for the recovery of the $622.50 wrongfully appropriated by them."

Defendants' demurrer to the amended petition was sustained, and the correctness of that ruling is the subject of this appeal.

It is the law that one or more stockholders who have a substantial amount of corporate stock, *i. e.*, more than a trivial amount, have the right to maintain an action in behalf of their corporation to protect its rights or to redress or prevent injuries to it, where the duty

of its officers to do so is clear and imperative and where the latter will not discharge that duty. In *Ryan, et al., v. L., A. & N. W. Rly. Co.,* 21 Kan. 365, it was held:

"As the corporation itself holds its property as trustee for the stockholders, who have a joint interest in all its property and effects, and each of whom is related to it as *cestui que trust,* if the corporation refuses to call to account, by proper legal proceedings, its directors and officers who are abusing their trust, misapplying the funds of the corporation, and receiving profits from contracts made by other parties with the corporation, through their aid, or if such corporation is still under the control of those who necessarily must be made defendants in such proceedings, so that it would be a mockery to require or permit a suit against them to be brought and prosecuted under their management, the stockholders who are the real parties in interest, or a part of them, may maintain an action to make such officers, and all parties who have participated with said officers in their unlawful transactions, account for their wrongs and frauds; and the corporation is a proper party defendant with them." (Syl. ¶ 4.)

(See, also, *Burnes v. City of Atchison,* 48 Kan. 507, 518, 29 Pac. 579; *Mining Co. v. McKibben,* 60 Kan. 387, 56 Pac. 756; *Fry v. Rush,* 63 Kan. 429, 65 Pac. 701; 14 C. J. 934 *et seq.;* Notes, 4 L. R. A. 745; 9 L. R. A. 654; 7 R. C. L. 308, 318-321.)

But all the authorities seem to agree that only a stockholder in good standing—not one who has ceased to be a stockholder—can maintain such an action. The right to sue on the corporation's behalf only devolves upon the individual stockholder when the corporate managing officers will not perform their clear and imperative official duty. It devolves upon him because of his membership in the corporation. The action to be brought is primarily for the benefit of the corporation. That the success of such action would possibly or probably result in a consequent benefit to the individual stockholder through the distribution of increased corporate dividends is not the legal foundation for his exceptional intrusion into the corporation's concerns. (Notes, 97 A. S. R. 29, 50; 51 L. R. A., n. s., 99. 112.) It has been held that a purchaser of corporate stock has no standing to complain of acts of corporate mismanagement which occurred prior to the time he became a stockholder. (*Home Fire Ins. Co. v. Barber,* 67 Neb. 644, 60 L. R. A. 927), and by parity of reasoning it should be clear that he cannot maintain such an action after he ceases to be a stockholder. The exceptional right of a stockholder to maintain such action under the recognized conditions inheres in and attaches to his ownership of the stock, and

does not exist apart from that ownership. (*Fry v. Rush,* 63 Kan.
429, syl. ¶ 3, 65 Pac. 701; *Hawes v. Oakland,* 104 U. S. 450, 26 L.
ed. 827, and Rose's Notes thereto, page 573; 14 C. J. 936.)

"Abstractly speaking, it is, of course, a sine qua non . . . that the
complainant be at the time a stockholder in the corporation in behalf of
which he would proceed. 10 Cyc. p. 974; Cook on Corp. § 735." (McClellan,
J., in *Empire Realty Co., et al. v. Harton,* 176 Ala. 99, 104.)

The case of *Rafferty v. Donnelly,* 197 Pa. St. 423, in some strik-
ing respects, is like the one before us. Certain officers of a corpora-
tion had irregularly raised their own salaries. Rafferty was a stock-
holder at the time. Later he sold his stock to one Snyder, with the
reservation—

" 'It is, however, understood and agreed, that this receipt shall in no way
prejudice or impair the right of myself, G. T. Rafferty, to compel Charles
Donnelly and B. H. Ruby [the officials who had paid themselves the ir-
regularly raised salaries] to account to me for any salaries illegally drawn by
them from the McClure Coke Company.' " (p. 429.)

The court said:

" 'But these were idle words. Rafferty had no right to any of the money
taken by Donnelly and Ruby which could be prejudiced or impaired. The
money, if improperly taken from the treasury, belonged to the company, and
the only right he had, we repeat, was to compel action for its return to the
treasury, and even this right, which was incident to the stock, passed with the
transfer of it to Snyder.' " (p. 429.)

Earlier in the opinion the court said:

"The appellant filed his bill as an individual against individuals, praying
for a decree that they pay to him his proportionate share of certain moneys
which he alleged they had illegally taken as salaries from the treasury of the
McClure Coke Company. At the time the money was taken from the
treasury of the company, he was one of its stockholders. At the time he
filed his bill, he was not. He had sold his stock nearly eighteen months be-
fore. . . . If the appellant did not part with his stock in ignorance of the
conduct of the appellees, of which he complains, and sold it, knowing what
they had done, his bill was properly dismissed. At no time did any of the
moneys of the McClure Coke Company belong to him, and, even if the ap-
pellees had improperly taken it from the treasury, the appellant, though a
stockholder, could not have sued for the recovery of what he might have
considered was his proportionate share of the sum so taken. He might have
instituted, or compelled the institution of proper proceedings for its return
to the treasury, where it would again have become an asset of the company
and preserved the real value of his stock, but this was all he could do. He
could simply have compelled restoration of the value to his stock which had
been taken from it by the officers' improper appropriation of the company's

moneys. In the present proceeding, as an individual, he seeks redress from the appellees, as individuals, for an alleged wrong resulting to him from their misconduct. If they did directly wrong him in his estate by fraudulently impairing its value, and, by their concealment of their misconduct, he parted with his property for less than it was really worth, he would, upon proper averments and proofs, be entitled to relief. He did aver, but according to the referee's intelligent findings, after a careful and patient consideration of all the testimony, failed to sustain his averment, that the appellees concealed from him their illegal appropriation of the moneys, and kept him in ignorance of the same until after he sold his stock. These findings were the end of his case." (p. 428.)

The foregoing seems to fully cover the matters raised by appellants. It may be added that it is far from clear that the State Bank of Esbon was only a nominal party to the original lawsuit. It was its corporate duty to keep its stock record straight and accurate. Consequently it could lawfully pay a reasonable attorney's fee to protect its rights in a lawsuit in which the accuracy of such matters was involved. In this case, the bank was a necessary party either as plaintiff or defendant (Civ. Code, §§ 34-36; 14 C. J. 938; Note, 9 L. R. A. 653, 654; Note, 97 A. S. R. 45); because it was primarily concerned in the validity of the payment of the attorneys' fee; nor could that question be conclusively and effectually determined unless the corporation were a party to the action; and there appears to be neither authority nor precedent for the maintenance of an action by stockholders for alleged wrongdoing by officials of a corporation in the mismanagement of the corporate funds or corporate affairs without making the corporation itself a party to such proceedings. (*Rafferty v. Donnelly*, supra.) Still more confidently may it be declared that one who is not a stockholder or who has ceased to be a stockholder cannot question the validity of the acts of the corporation.

The judgment is affirmed.