[No. 4811.]

BOLDENWECK v. BULLIS ET AL.

v.

THE FIRST NATIONAL BANK OF IDAHO SPRINGS, COLORADO, ET AL.

v.

SCHOFIELD ET AL.

v.

JACKSONVILLE NATIONAL BANK OF JACKSONVILLE, ILLINOIS, ET AL.

v.

RANNELLS ET AL.

v.

DINES ET AL.

v.

KING ET AL.

v.

GEHRMANN ET AL.

1.  Judgments—Vacating for Fraud.

Fraud which will vitiate a judgment must be fraud in procuring the judgment, and not fraud in the account upon which the cause of action is instituted, since judgments are not impeachable for frauds relating to the merits between the parties. —P. 258.

2.  Corporations—Stockholders—Avoiding Corporation Transactions—When Action Cannot Be Maintained.

Stockholders who vote in favor of a transaction and their transferees cannot maintain a suit on behalf of the corporation and other stockholders to avoid such transaction.—P. 259.

3. **Same.**

Where a person purchases stock in a corporation after the stockholders have authorized the president to dispose of its property, and the transaction has been consummated, he is not in position to question its legality. Purchasing stock in a corporation for the purpose of making it the basis of litigation with respect to past transactions ought not to be encouraged.—P. 259.

4. **Same.**

If a stockholder wants protection against the consequences of an act of the corporation, he must ask for it with sufficient promptness to enable the court to do justice to him without doing injustice to innocent third parties.—P. 260.

5. **Same.**

Where an act done by a private corporation is not per se illegal, nor malum prohibitum, and is not a matter of public concern, but merely affects the interests of the stockholders, the latter may so act as to deprive themselves of the right to challenge its validity.—P. 261.

6. **Practice in Trials—Conduct of Cases—Judges—Counsel—Latitude in Examining Witnesses.**

A trial judge should permit counsel to try their own cases, and allow them, within reasonable limits, sufficient time to examine witnesses and to introduce testimony so that the case may be fairly presented on both sides.—P. 261.

7. **Appellate Practice—Practice in Trials—Restricting the Examination of Witnesses.**

Where the action of the trial court in arbitrarily preventing counsel from further examining witnesses and in unnecessarily restricting cross-examination did not, however, prevent the introduction or consideration of any testimony material or relevant to the question upon which the case turned, such action does not constitute prejudicial error.—P. 261.

*Appeals from the District Court of Clear Creek County.*

*Hon. Frank W. Owers, Judge.*

Consolidated actions by Frederick Boldenweck, on behalf of himself and all other stockholders of The Consolidated Stanley Mining Company and The Salisbury Mining & Milling Company similarly situated, against Arthur D. Bullis and William A. Williams et al., against The First National Bank of

Idaho Springs, Colorado, et al., against Charles J. Schofield and William Brown, Jr., et al., against The Jacksonville National Bank of Jacksonville, Illinois, et al., against Charles S. Rannells et. al., against Tyson S. Dines et al., against James T. King et al., and against Charles A. Gehrmann et al. From judgments for the defendants, plaintiff appeals.

*Affirmed.*

Mr. CHAS. S. THOMAS, Mr. HARRY S. SILVER-STEIN, and Mr. WM. P. MALBURN, for appellant.

Mr. A. D. BULLIS and Mr. F. L. COLLOM, for appellees.

Mr. JNO J. WHITE, for appellee Gehrmann.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellant, as a stockholder of The Consolidated Stanley Mining Company and The Salisbury Mining & Milling Company, brought eight actions. To each case the respective appellees were made defendants. The purpose of these actions was two-fold: (1) To set aside judgments obtained by certain of the appellees against the companies in which plaintiff was a stockholder and The Stanley Consolidated Mining & Milling Company; and (2) to set aside conveyances of the first two companies named to the latter. The complaints are quite voluminous, but their averments are to the effect that a conspiracy existed on the part of the defendants, who were directors of The Consolidated Stanley Mining Company and The Salisbury Mining & Milling Company, to wreck these companies and appropriate their assets to their own use. For the purpose of carrying out this conspiracy it is charged that the defendant King, who was president of all three companies, acting in collusion with his associates, caused a number of suits

to be instituted, some against The Consolidated Stanley Mining Company, some against The Salisbury Mining & Milling Company, and some against The Stanley Consolidated Mining & Milling Company. Judgments by default were taken in these actions against the company, or companies, named as defendants. It is charged that these judgments were obtained by fraud. They are the judgments attacked.

In support of the second branch of the case it is alleged in the respective complaints that the defendant King, for the purpose of carrying out the conspiracy charged, caused a meeting of the stockholders of The Consolidated Stanley Mining Company to be held, and having secured proxies from shareholders representing from seventy-five to eighty per cent. of all stock, secured a resolution to be passed, empowering him to manage and control the affairs of the company, and sell and dispose of its property. It is alleged that practically the same proceedings were had with respect to the affairs of The Salisbury Mining & Milling Company. It is then alleged that thereafter the defendant King entered into an agreement on behalf of The Consolidated Stanley Mining Company and The Salisbury Mining & Milling Company, with the defendants, Reidel and Torrey, the purpose of which was to incorporate The Stanley Consolidated Mining & Milling Company, which should acquire the properties of the other two companies upon terms and conditions mentioned in the contract, among which was the assumption by the grantee company of the indebtedness of the grantor companies, and the issuance to defendant King, trustee, of all of the capital stock of the vendee company. Under this agreement conveyances were executed by the defendant King on behalf of the first two companies, conveying

all their property to The Stanley Consolidated Mining & Milling Company. Reidel and Torrey were to dispose of the bulk of the stock of this company at a price fixed in the agreement with King, and account for the proceeds to him. The money thus realized was to be pro rated among the stockholders of the grantor companies.

To these complaints the defendants answered, and in so far as such answers presented affirmative defenses, replications were filed. The causes were consolidated for trial, and on the issues formulated the court found that the judgments attacked were valid, and not founded upon, or tainted by, fraud, and that there was no fraud, either actual or constructive, in the conveyances sought to be set aside. Judgment was accordingly entered, dismissing the complaint in each of the actions. From this judgment the plaintiff appeals. Such additional facts as may be necessary to a proper understanding of the questions determined will be stated in connection therewith.

Did the parties who secured the judgments sought to be set aside commit fraud in procuring them? is the vital question first to consider.

The defendant companies in these actions were duly served with summons. Appellant knew that they were brought. He had this knowledge in ample time to have defended those suits had he seen fit. He knew of the existence of the claims upon which they were brought long before they were commenced, but refused to co-operate with the board of directors of The Consolidated Stanley Mining Company in their efforts to take care of these claims, although he was a member of that board. No steps were taken in these actions which in any manner deceived the defendant companies or appellant. A consideration of all matters which might have been

relevant as a defense thereto or which might be material in some other character of action, are therefore eliminated.

Fraud which will vitiate a judgment must relate to extrinsic or collateral matters and not to issues involved in the case in which the judgment was rendered; that is to say, the fraud in such case must be fraud in *procuring* the judgment, and not fraud in the account upon which the cause of action is instituted, because judgments are not impeachable for frauds relating to the merits between the parties.— *Venner v. Denver Union Water Co., ante,* p. 212; Black on Judgments, § 370; Freeman on Judgments, § 489.

The finding and conclusion of the trial court that the judgments attacked were valid and not founded upon, or tainted by, fraud, cannot be disturbed.

The inference is sought to be drawn that a fraud was perpetrated at the meetings of the stockholders of The Consolidated Stanley Mining Company and The Salisbury Mining & Milling Company, when the stockholders voted to empower the defendant King to dispose of the properties belonging to these companies as he might see fit. It is also urged that these acts of the stockholders were *ultra vires.* Counsel for plaintiff fail to point out wherein any fraud was perpetrated with respect to these matters. If the action of the stockholders was *ultra vires* plaintiff cannot complain. The boards of the respective companies authorized the defendant King to make the contract he did, and execute the conveyances attacked. Plaintiff purchased his stock in The Consolidated Stanley Mining Company subsequent to the meeting of the stockholders of that company which authorized King to dispose of its property. It appears to be stock which participated in

that meeting, and voted in favor of the transaction which he now seeks to have set aside. Stockholders who vote in favor of a transaction and their transferees cannot maintain a suit on behalf of the corporation and other stockholders to avoid such transaction.—*Gumaer v. The Cripple Creek T., T. & M. Co., ante,* p. 1; 1 Cook on Stockholders, § 40; 2 *Ib.,* § 735.

It does not appear from the record that the stock of plaintiff in The Salisbury Mining & Milling Company voted to authorize King to dispose of the property of that company. It does appear, however, that he purchased this stock and his stock in The Consolidated Stanley Mining Company after the transactions attacked were consummated. Inasmuch as his ownership of the stock in both companies was not vested in him at the time of the transactions which he now seeks to avoid, and such ownership did not result by operation of law, he is not in a position to successfully attack them.—*Hawes v. Oakland,* 104 U. S. 450; *United El. S. Co. v. La. E. L. Co.,* 68 Fed. 673; 2 Beach on Corp., § 437; *Alexander v. Searcy,* 81 Ga. 536; *Dimpfell v. O. & M. R. Co.,* 110 U. S. 209.

Purchasing stock in a corporation for the purpose of making it the basis of litigation with respect to past transactions ought not to be encouraged.

There are additional reasons why he should be estopped from questioning the transactions under consideration. Very shortly after the deal with The Stanley Consolidated Mining & Milling Company was consummated he knew of the fact. He was present at a meeting of the stockholders of The Consolidated Stanley Mining Company at which a report was submitted by the defendant King of the deal with The Stanley Consolidated Mining & Mill-

ing Company. He made no objection to the report, but refused to vote his stock. It appears that Reidel and Torrey have disposed of some of the stock of The Stanley Consolidated Mining & Milling Company. It also appears that this company has incurred obligations. If the transactions with this company were now avoided, the result would be that its stock and obligations would be worthless. To entitle stockholders to relief against the action of a corporation they must bring suit within such time after the doing of the acts complained of that the court may stop, or undo, the wrong of which they complain, without doing wrong to some other person; or, in other words, if a stockholder wants protection against the consequences of an act of the corporation, he must ask for it with sufficient promptness to enable the court to do justice to him, without doing injustice to innocent third parties.—*Levin v. Chicago G. L. & C. Co.*, 64 Ill. App. 393.

The transaction with The Stanley Consolidated Mining & Milling Company is attacked because the directorate in the three companies was largely the same, and the rule is invoked that an agent cannot purchase the property of his principal; and also, attacked upon the ground that the grantor companies could not dispose of their property except for cash. The most that can be claimed in support of these propositions is, that the transaction was voidable. There was no moral turpitude involved in the sale of the property because the directorate in the three companies was practically the same, or for the reason that instead of cash, the stock of the grantee company was accepted. Plaintiff was aware of all these conditions, but did not act with that degree of promptness, after this knowledge and in the circumstances, which would justify a court in permitting

him to attack a transaction which is merely voidable. Where an act done by a private corporation is not *per se* illegal, nor *malum prohibitum,* and is not a matter of public concern, but merely affects the interests of the stockholders, the latter may so act as to deprive themselves of the right to challenge its validity.—*Bensick v. Thomas,* 66 Fed. 104. Whether or not, however, the transaction under consideration was even voidable is a question upon which we express no opinion.

Error is also assigned upon the conduct of the presiding judge at the trial, who, it is claimed, arbitrarily prevented witnesses from being further questioned, unnecessarily restricted cross-examination, and in other ways prevented the plaintiff from fairly presenting his case. An examination of the record discloses that there is some foundation for this complaint. A trial judge should permit counsel to try their own cases, and allow them, within reasonable limits, sufficient time to examine witnesses and introduce testimony, so that the case may be fairly presented on both sides. It does not appear, however, that the action of the trial court prevented plaintiff from introducing, or having considered, any testimony which would have been material or relevant with respect to the questions upon which the case turns; and therefore, it does not appear that the action complained of prejudiced his rights.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.